UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MICHAEL DOYLE

    Plaintiff,

        v.                                  CAUSE NO. 3:25-CV-714-HAB-ALT

FRY, HUDSON, SUTHERLAND,

    Defendants.

OPINION AND ORDER

Michael Doyle, a prisoner without a lawyer, filed a complaint. ECF 2. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

On October 2, 2024, Officer Fry placed Doyle in handcuffs to bring him to the mailroom to get his legal mail. On the way there, he became upset because Doyle was confined to a wheelchair and couldn't walk up the stairs. As a result, Lt. Henderson told Officer Fry to deliver Doyle's legal mail to him instead. As some point, Doyle told Officer Fry the handcuffs were "tight on my wrist," but Officer Fry simply responded that he would be back in his cell soon. ECF 2 at 2. When they arrived at his cell, Officer

Fry locked the door and walked away. Doyle yelled after him, "My cuffs!" but Officer Fry didn't respond or turn around. *Id.*

According to Doyle, Officer Fry didn't return to the segregation range at all that day. Doyle claims he sat in his cell and eventually fell asleep, which "made my cuffs tighter, do to the fact they was not Double locked." *Id.* (verbatim). His hands eventually became numb. Doyle remained in the handcuffs for a total of five hours before Officer Sutherland arrived on the range and removed them. He took Doyle to medical for the "gash marks" on his wrist and sat with him while there. When Doyle filed a grievance about the matter later, Officer Sutherland allegedly lied and said he didn't remember anything about the situation. Doyle has sued Officer Fry, Lt. Hudson, and Officer Sutherland for monetary damages.

The Eighth Amendment prohibits cruel and unusual punishment—including the application of excessive force—against prisoners convicted of crimes. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). The "core requirement" of an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (quotations and citation omitted). Deference is given to prison officials when the use of force involves security measures because "significant risks to the safety of inmates and prison staff" can be involved. *McCottrell*, 933 F.3d at 663 (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). Jails are dangerous places, and security officials are tasked with the difficult job of preserving order and discipline among inmates. *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009). Several factors are explored when determining

whether an officer's use of force was malicious or legitimate, including the need for applying the force, the threat posed to the safety of staff and inmates, the amount of force used, and the extent of the prisoner's injury. *Hendrickson*, 589 F.3d at 890.

Here, nothing in the complaint gives rise to an inference that the original application of handcuffs was anything more than a routine safety measure used to transport an inmate in segregation to a different area of the prison. Doyle says he mentioned the handcuffs being "tight on [his] wrist" while he was waiting for his legal mail—and that Officer Fry dismissed his concerns by telling him he'd be back in his cell soon—but he doesn't allege he elaborated on the issue or expressed any sense of pain to Officer Fry at that time. Then, after Doyle was deposited into his cell, Officer Fry rushed away without removing the handcuffs even though Doyle yelled, "My cuffs!" as he was leaving. Again, Doyle doesn't allege he advised Officer Fry that he was in pain—at most, Officer Fry knew the handcuffs were still on and potentially "tight" but walked away anyway. Doyle admits it wasn't until *after* he fell asleep that the handcuffs tightened further and made his hands go numb. He doesn't allege Officer Fry knew about this development—in fact, he says he never returned to the range—or that he told any of the other officers he was experiencing pain or discomfort during the five hours he remained handcuffed. Even crediting all the facts in the complaint as true, the court can't conclude Officer Fry's use of handcuffs constituted excessive force. *See Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006) (finding no excessive force where police officer: (1) applied the handcuffs "somewhat too tightly;" (2) the plaintiff complained about them once "without elaborating on any injury, numbness, or degree of pain;" and (3) the plaintiff

3

experienced "some discomfort and pain from the handcuffs" but "minimal" actual injury).

Lt. Hudson is only mentioned once in the complaint—when it was discovered that Doyle couldn't go up the stairs in a wheelchair, Lt. Hudson told Officer Fry to go get the mail himself. This doesn't state any sort of claim against Lt. Hudson. Similarly, Doyle says Officer Sutherland is the one who found him inside his cell with the handcuffs still on five hours later and took him to medical. Nothing about these allegations suggests Officer Sutherland was deliberately indifferent to Doyle's needs. The fact that he allegedly lied about the situation afterwards and claimed not to remember anything about it doesn't transform his actions into an Eight Amendment violation.

This complaint does not state a claim for which relief can be granted. If Doyle believes he can state a claim based on (and consistent with) the events described in this complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) GRANTS Michael A. Doyle Jr. until **September 3, 2026**, to file an amended complaint; and

4

(2) CAUTIONS Michael A. Doyle Jr. if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on August 3, 2026.

s/ Holly A. Brady
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT